# COOS,

## BELLOWS *v.* STONE & a.

The general rule in equity, that where an allegation in the answer is responsive to the bill, if the plaintiff seek to impeach the answer, he must overcome it by something more than the testimony of a single witness, is not limited to matters in the answer which deny what is stated in the bill. There is no sound foundation for a distinction in this respect between matter of denial and matter of affirmance, if the latter be in relation to a particular upon which the bill requires the defendant to make an answer. The true distinction is between allegations upon those subjects upon which the bill requires some answer, and allegations of new matter, not stated or inquired of in the bill, but introduced by the defendant in his defence.

If the whole subject matter of the statement or allegation in the answer might have been left out, then the allegations in the answer upon that subject are not responsive to the bill; but if the omission of some statement upon that subject would furnish just ground of exception to the answer, then the statement, to the extent to which it is required, and whatever its character, whether affirmative or negative, is but a response to the requisition of the plaintiff.

If the bill require the defendant to state an account between the parties, the account so stated is responsive to the bill.

An answer, in order to be evidence, so as to require something more than the evidence of a witness to overcome it, must be distinct, positive, and of matter which may be within the knowledge of the defendant.

Where a defendant, having stated an account in his answer, dies during the pendency of the suit, and the matters involved in the account are of long standing, if there is evidence tending to support the account, the court may direct that the account be taken as *primâ facie* evidence, irrespective of the question whether it is responsive to the bill.

If the plaintiff, in a bill to redeem a mortgage, admits that a certain sum is due, and the defendant claims a larger sum, the master cannot report that nothing is due.

In Equity.  The original bill stated that prior to January 1, 1821, two of the defendants, David Stone and Josiah Bellows, 3d, partners under the firm of Stone & Bellows, were under certain liabilities for the plaintiff, Josiah Bellows, 2d, as sureties, and that he induced them to raise $2,900 at the Cheshire bank, and give their note ; and as security for that and whatever other liabilities they might be under on his account, he caused a certain certificate of indebtedness, for the sum of $5,300, to be made by the assignee of the effects of Thomas Carlisle & Co., of which he was a member, to them, payable out of the creditor's fund, as an honorary debt, and alleged that divers payments had been made to them upon that certificate.  It stated, farther, that the plaintiff procured Thomas Bellows, the other defendant, to indorse the note to the Cheshire bank, and in order to indemnify him the plaintiff mortgaged the Stanley farm to him as security for the payment of the certificate, and then set forth certain proceedings in an action at law upon the mortgage, alleging a mistake in an agreement between the parties to that suit, upon which the conditional judgment was rendered, and which had prevented the taking of an account between the parties.  The plaintiff then stated that there was a balance of $300 and some interest due on the note to the Cheshire bank, and that the plaintiff was not indebted to Stone & Bellows in any other sum ; that he had called upon the defendants to render an account of the avails of the certificate and of the amount of payments, &c. ; and it concluded with a prayer that the defendants might render a just and true account, and that an account might be taken, and that, upon the payment of such sum as might appear to be due, the plaintiff might redeem the premises mortgaged.

The defendants filed their answers, evidence was taken, and the opinion of the court delivered, after which the plaintiff moved to amend his bill.  (See the case, 14 N. H. Rep. 175).

The statements of the bill, as amended, and the answers, so far as they are material at this time, are set forth in the opinion in this case.

The plaintiff obtained liberty to amend his bill so as to state that the certificate and mortgage were made to secure any debts that might be due from him to Stone & Bellows, as well as all their liabilities for him ; and the judgment at law in the action upon the mortgage having been set aside, so far as to permit an account to be taken of the amount due upon the mortgage, the case was committed to masters to state the account.

The masters reported that, " on the opening of the case the counsel for the plaintiff referred to the answer of the defendants, and insisted that it was not evidence for the defendants in relation to the accounts to be stated between the parties. The counsel for the defendants insisted that the answer and schedule were evidence of the payments and claims charged in the debtor side of said schedules, and insisted that the same were *primâ facie* evidence of the account between the parties, and unless impeached should be stated and reported by the masters as the final account between them ; and on this question the parties requested the decision of the masters, preliminary to the further hearing of the case; and thereupon said masters did decide that said answer and schedules were not *primâ facie* evidence of the payments and claims charged on the debtor side of the account stated in said answer, or of the account between the parties." To which the defendants excepted.

No further evidence being offered by either party to show the accounts between the parties, the masters found " that there is nothing due in the premises from the said Josiah Bellows, 2d, to the defendants, or either of them."

*H. A. Bellows,* for the defendants. The bill charges that the certificate was pledged, and states the amount

of the indebtedness to be $300 and interest, from the plaintiff to Stone & Bellows.

The answer states the object of the pledge. It is responsive to the bill upon the subject of the indebtedness. It states the amount of the indebtedness. The bill calls for an account.

The answer, being responsive to the bill, is evidence for the defendants.

There are cases where it is held that when the answer introduces affirmative matter, it is not evidence, but this position cannot be sustained. 1 Cow. 713, *Woodcock* v. *Bennet,* is in point. The chancellor's decision, 2 Johns. Ch. 62, *Hart* v. *Ten Eyck,* is overruled; 3 Wend. 643, *Forsyth* v. *Clark;* 6 Wend. 22, *Dunham* v. *Jackson;* 8 Wend. 259, *Furniss* v. *Hone;* 1 Paige 239, *Strafford* v. *Bryan;* 2 McCord's Ch. 90, *McCaw* v. *Blewitt,* cited 2 Cow. Phil. Ev. 285, and other cases there cited; 6 Cranch 24, *Field* v. *Holland;* 2 Story 267, *Langdon* v. *Goddard;* 11 N. H. Rep. 501, *Hollister* v. *Barkley;* 1 Ves., Jr., 546, *Blount* v. *Burrow;* 2 Story's Eq. 744.

If there had been an interrogatory, can there be any doubt that the defendants would have been bound to answer? but the stating part of the bill lays the foundation of the answer.

The report finds nothing due. If the answer is responsive to the bill, the report is erroneous. Besides, the bill admits that there is $300 due, with some interest.

*Livermore,* for the plaintiff. An action in chancery comprises, (1) examination, or discovery; (2) defence. Wigram's Points 10, 11. The former is responsive to some interrogatory in the bill, founded on some statement therein contained. The interrogatory need not be special, but the statement must. Mit. Plead. 45, and Lube's Analysis, cited in the note. The latter (the defence) is some new matter set up in the nature of a bar, or avoid-

ance, of a part or all of the plaintiff's claim.  Wigram *ub. sup.*

The defensive part of an answer is never in any sense evidence for the defendant.  *Hart* v. *Ten Eyck*, 2 J. C. 88–95, and note.

In a limited sense, in certain cases, the examination, or responsive part of the answer, is evidence for the defendant; or, more properly perhaps, may be said to operate, in connection with the bill, as a sort of estoppel against the plaintiff; for, where a material fact is directly put in issue by the answer (of course first stated in the bill), the court requires the evidence of more than one witness as the foundation of a decree.  Gresley's Eq. Ev. 4, 156.  Or, if a defendant positively, plainly and precisely deny an assertion in the bill, and one witness only prove it as positively, clearly and precisely as it is denied, no decree for relief can be made, unless the circumstances of the case so preponderate that greater credit, upon the testimonies of both sides being fairly balanced, must be given to the depositions of the witnesses than to the answer of the defendants, laying aside all recollection that the oath of one of the parties is that of an interested person.  See 1 Ball & B. 234, *Dawson* v. *Massey.*

It is only when the answer denies an assertion in the bill that it is evidence for the defendant.  It is not such when, in reply to a call or prayer in the bill for information on particular subjects, and assuming to give such information, it set up new facts.  See *Boyd* v. *Dunlap*, 1 J. C. 478.

Now the defendants' averment that the plaintiff was, on the 9th of September, 1823, indebted to Stone & Bellows in the sum of $5,749.46, according to the schedule, is clearly in no sense responsive to the bill.  The bill contains no statement which can be the foundation for any discovery pertaining to the accounts.  No loss of documents is stated.  No papers or information are alleged to

be in the exclusive custody or control of the defendants, nor is there an interrogatory touching the state of the accounts.

The case of *Boardman* v. *Jackson*, 2 Ball & B. 382, is to the precise point of the present exception; also, *Robinson* v. *Scotney*, 19 Ves. 582; *Blount* v. *Burrow*, 4 Bro. Ch. 74, and cases there cited.

The cases cited in Story's Eq. 744, do not sustain the rule in the latitude in which he lays it down.

With regard to the $300, the bill states that the pledge was for the security of the $2,900 note. The defendants, in their answer, disclaim that note. The defendants, therefore, disclaim all the admissions of the plantiff; and this is not excepted to, in the exceptions to the master's report.

PARKER, C. J. The general rule, that "where an allegation in an answer is responsive to the bill, if the plaintiff seek to impeach the answer upon that point he must overcome it by something more than the testimony of a single witness," was laid down in *Hollister* v. *Barkley*, 11 N. H. Rep. 501.

The plaintiff's counsel contends that this rule is to be limited to matters in the answer in denial of what is stated in the bill, and there are some authorities which countenance such a position. See 2 Cow. Phil. Ev. 286, note, citing 1 Wash. 224; 6 Monroe 620; 1 Munf. 395.

But we are of opinion that neither the reason of the thing nor the weight of authority will be found to sustain it.

There is no sound foundation for a distinction in this respect between matter of denial and matter of affirmance, if the latter be in relation to a particular upon which the bill requires the defendant to make an answer.

The true distinction is between allegations upon those subjects upon which the bill requires some answer, and

Bellows *v.* Stone.

allegations of new matter, not stated or inquired of in the bill, but introduced by the defendant in his defence.

The reason why the answer of the defendant is evidence in any particular, and stands until it is overcome by evidence, is not because it is a direct denial of the plaintiff's statement, but because the plaintiff, by calling for a response or statement by the defendant, under oath, upon a particular subject, has, in effect, thus far made the defendant a witness, and cannot be heard to say that no dependence is to be placed upon the answer he has given. Whether he call upon him to make an answer which must directly affirm or deny some statement, or whether he require him to make a statement of the facts upon a particular subject matter, the principle is the same. The plaintiff introduces into the cause the answer or statement which he has thus required the defendant to make, and must take that statement as true, unless he can disprove it by a weight of evidence against it.

But in relation to other matters, respecting which the plaintiff has made no allegation or inquiry, and respecting which the bill, therefore, calls for no answer; matters which are not necessary to the plaintiff's case, but which are introduced into the case by the defendant himself, by way of defence to, or avoidance of, the case which the plaintiff might otherwise make against him; although the defendant has a right to allege them in his answer, yet they are not to be taken as true against the plaintiff, without proof; for the plaintiff's bill, requiring no answer upon those matters, the defendant is not, as to them, to be regarded as if he were a witness introduced by the plaintiff. In other words, the plaintiff, by calling upon the defendant to answer, does not make him a witness as to all the matters that he may state, but only as to those matters upon which his bill calls for a statement. As to new matter, set up by way of defence, if the defendant cannot be said to be a volunteer, because that matter may

be necessary to his defence, he may be well said to be a party setting up his own rights, and therefore bound to prove his own allegations.

The authorities it is believed are very generally not in conflict with the rule as we have laid it down, although, in some of them, it was undoubtedly held differently. There are many of them in which it does not appear how far the bill called for an answer in the particulars in question, and in which the distinction between matter responsive to the bill, and matter in defence, set up by way of avoidance, was not considered.   The cases are quite numerous.   2 Atk. 254, *Brace* v. *Taylor;* id. 383, *Parteriche* v. *Powlet;* 2 Ves., Sen., 42, *Glynn* v. *The Bank of England;* 1 Brown's Ch. 53 (Perkins' ed.), *Pember* v. *Matthews,* and cases cited, note 3; 4 Brown 75, *Blount* v. *Burrow;* 6 Wheat. 478, *Hughes* v. *Taylor;* 5 Peters 99, 111, *Union Bank of Georgetown* v. *Geary;* 12 Peters 178, *Clark* v. *White;* 1 Johns. Ch. 459, *Smith* v. *Brush;* 2 Johns. Ch. 88, 93, note, *Hart* v. *Ten Eyck;* Hoffman's Ch. 188, *Dunham* v. *Gates;* 3 Mason 378, 383, *Randall* v. *Phillips;* 2 Sumn. 489, 507, 516, *Flagg* v. *Mann;* 15 Me. 125, 127, *O'Brien* v. *Elliot;* 21 Me. 276, *Gould* v. *Williamson;* 8 Pick. 119, *New-England Bank* v. *Lewis;* 8 Cow. 387, *Briggs* v. *Penniman;* 1 Paige Ch. 239, *Stafford* v. *Bryan;* Cooper's Ch. Cas. 162, 163, 172, *Reeks* v. *Postlethwait;* 2 Ves., Jr., 243, *Mortimer* v. *Orchard;* 6 Cranch 24, *Field* v. *Holland;* 10 Johns. 534, *Clason* v. *Morris;* 1 Wend. 596, 619, *Murray* v. *Blatchford;* 3 Wend. 643, *Forsythe* v. *Clark;* 1 Cow. 712, 743, *Woodcock* v. *Bennett;* 6 Wend. 22, 25, 30, *Dunham* v. *Jackson;* 4 Paige 373, *Smith* v. *Clark;* 2 Harris & Johns. 304, *Hopkins* v. *Stump;* 15 Vt. 85, *Lane* v. *Marshall;* id. 93, *Pierson* v. *Clayes.*   Several of the authorities last cited are precisely to the point, as we have stated it.

Mr. Justice *Story,* in his Equity Jurisprudence, states the principle broadly, that the answer is proof in favor of

the defendant as to matters of fact, of which the bill seeks a disclosure from him; but proceeding "to express the doctrine in another form," he says, that when the defendant "negatives the allegations of the bill, and the evidence is only of one person affirming, as a witness, what has been so negatived, the court will neither make a decree nor send the case to be tried at law, but will simply dismiss the bill. 2 Story's Eq. 744. He says, however, immediately afterwards: "The plaintiff calls upon the defendant to answer an allegation of fact which he makes, and thereby admits the answer to be evidence of that fact." It seems, therefore, that he could not have understood the rule to be limited to matter of denial in the answer.

The reason why, it is said, in several of the cases, that the denial of the defendant is evidence for him, is, probably, because the case was one which required admission or denial. In such cases, it would be only upon matter of denial that the question could arise, whether the answer was evidence for the defendant; but if the answer which is required involve some statement favorable to the defendant other than matter merely in denial of the plaintiff's allegations, the defendant, being required to furnish that matter, is entitled to the benefit of it. An answer does not set up a fact "by way of avoidance merely," when it is only a response which the defendant is obliged to make to the bill of the plaintiff.

The cases, *Boardman* v. *Jackson,* 2 Ball & Beatty 382; *Ridgway* v. *Darwin,* 7 Ves. 404; *Thompson* v. *Lamb,* id. 588, relate to the rule respecting charges and discharges before the master, and decide that a party, charging himself by his answer with a sum of money, cannot discharge himself before the master by a schedule stating his disbursements. Allegations, or schedules of payments, or disbursements, if set forth in the answer itself, would not be evidence to discharge the defendant of money which

he admitted he had received, if there were nothing in the bill calling for a statement of such disbursements, because the matter would not be responsive to the bill. It would be like setting up an independent demand in discharge. See *Robinson* v. *Scotney*, 19 Ves. 582.

It was remarked by Lord *Eldon*, in *Thompson* v. *Lamb*, that " a person, charged by his answer, cannot, by his answer, discharge himself; nor even by his examination, unless in this way : If the answer or examination states that upon a particular day he received a sum of money and paid it over, that may discharge him ; but if he says that upon a particular day he received a sum of money, and upon a subsequent day he paid it over, that cannot be used in his discharge, for it is a different transaction." If this remark be referred to a case where the bill inquires respecting disbursements as well as receipts, it will hardly bear examination. The plaintiff is as well entitled to an account of the former as of the latter, if he demand it ; and, having demanded it, why shall he not be bound by the statement as far as he would be in the other case ?

Nor does the particular day on which the disbursement was made, or the sentence in which it is stated, make any difference, although it seems formerly to have been thought otherwise. See Amb. 589, cited 2 Johns. Ch. 87. If the party answer that he received the money in such a way as not to make himself accountable for it, as if he say he received it, but as a gift, that might, perhaps, furnish ground for a distinction.

The account rendered by Stone & Bellows of the indebtedness of the plaintiff to them, is not, however, matter in discharge, and the case, therefore, is not within the principle of the cases upon which the plaintiff most confidently relies. Their answer sets forth that they hold the certificate as security, and the debts and sums due for which they so hold it. It is not as if they were acknowledging a debt once existing against themselves, and then

setting up payments and disbursements in discharge of that indebtedness.

The plaintiff alleges that the rendition of the account annexed to the answer is not responsive to the bill, and therefore not evidence for the defendant.

There is, we think, a very easy test by which to try this as well as other parts of the case. If the whole subject matter of the statement or allegation in the answer might have been left out, then the allegations in the answer upon that subject are in no sense responsive to the bill, the bill requiring no statement upon that point. But if the omission of some statement upon that subject would furnish just ground of exception to the answer, then the statement, to the extent to which it is required, and whatever its character, whether affirmative or negative, is but a response to the requisition of the plaintiff.

" There is no principle better established," says Mr. Chancellor *Hanson*, " than this, that if a defendant be compelled to answer, whatever he says on oath shall prevail unless refuted," &c. 2 Harr. & Johns. 304.

Tested by this principle, there can be no doubt that the account rendered by the defendants Stone & Bellows, so far as it states the sums they had paid for the plaintiff, for which they held the certificate as security, is responsive to the statements and requisitions of the plaintiff.

The bill, as amended, states that before the 9th of September, 1823, Stone & Bellows had become liable, as indorsers for the plaintiff, at several of the banks, and particularly at the Cheshire bank, *and the plaintiff, to relieve himself from these liabilities, and secure them, procured them to raise for him at the Cheshire bank $2,900, and to execute their note to the bank for that sum;* and for the purpose of paying that note, and to indemnify them against any other liabilities they might be under on his account, and to secure the payment of any sums he then owed them, or might thereafter owe them, he procured the creditors

of Thomas Carlisle & Co. to issue a certificate for the plaintiff's private debt against that firm, amounting to $5300, directly to them, for that purpose; that he procured Thomas Bellows, the other defendant, to become surety upon the note, and gave him the mortgage, with a condition that the plaintiff should pay the certificate thus made to Stone & Bellows. It then states that *Stone & Bellows received on the certificate,* from the avails of the property assigned to the creditors of Carlisle & Co., at different times, *sums amounting to $2,200 ; that the plaintiff paid to Thomas Bellows $400, which he paid to Stone & Bellows, leaving a balance due on the note of $300, and such amount of interest as Stone & Bellows have paid on account of the note ; and that he is not indebted to them in any other sum, or for the payment of any other sum ; that he has been and is ready to pay them all such sums of money as may be justly due to them, upon account of the premises, upon the amount being ascertained,* and insists that upon payment thereof he is entitled to hold the land discharged from the mortgage, and to a return of the certificate for the balance thereof, or that Stone & Bellows should account to him therefor. It then states the rendition of the judgment in the suit upon the mortgage, as a nominal judgment, and the appointment of an auditor to ascertain the sum justly due between the parties, and the failure to ascertain the balance due in that mode, on account of the construction given to the agreement for the rendition of the judgment. And it then states that the plaintiff frequently called upon Stone & Bellows, in a friendly manner, to render to him a just and true account of the avails of the certificate, and the amount of their payments in respect thereof, and to come to an adjustment of all the said concerns and business between them ; and that he had hoped that they would have rendered a just, true and full account of all payments to them on account of the certificate, and all payments made by them ; but that they have never ren-

dered any account, but have refused and still do refuse to render any account in the premises, or to settle and adjust the same, &c. And after charging certain pretences, it proceeds : To the end, therefore, that the defendants may answer to all and singular the matters stated and charged, &c., and that Stone & Bellows *may render a just and true account of all the sums of money received by them, or either of them,* on account of the said certificate executed to them by the creditors of the said Thomas Carlisle & Co., or otherwise, and *of all sums of money paid by them upon the note executed to the Cheshire bank for the sum of* $2,900, *and for all other sums of money paid by them, or either of them, for any liabilities which they, or either of them, were under for and on account of the plaintiff ;* and that an account may be taken thereof, and of all sums due to them, or either of them, and secured by a pledge of the certificate, may it please the court to grant a subpœna, &c.

The answer of Stone & Bellows states matters prior to the delivery of the certificate ; that the plaintiff was indebted to them in divers sums, and they, being under liabilities for him, he conveyed to them certain lands in Lebanon, and certain locks, canals and mills, on condition to be void on payment of all the sums of money, with all costs, &c., and alleges that the certificate and mortgage were substituted as security instead of the locks and canals ; that the plaintiff proposed to deliver the certificate, to be held by them for all sums due them, and all moneys advanced and services performed ; that they refused, on the ground that it was not of equal value, and he then proposed to secure the payment of the certificate by a mortgage on the Stanley farm, the certificate and mortgage to be held by them as security, in the place and stead of the locks and canals, &c. ; that having occasion to borrow a sum of the Cheshire bank, they procured Thomas Bellows to sign a note of $2,900 as surety, released the locks and canals to the plaintiff, and procured

him to make the mortgage to Thomas Bellows, with a condition to pay him the certificate of $5,300, for the purpose of indemnifying him, and to pay over the balance to them, or to convey to them the certificate and mortgage, which were received as security instead of the locks and canals.

It then alleges a foreclosure of the mortgage. But if the court shall be of opinion that the plaintiff has a right to call for a statement of their claims against him, as they existed on the day of the filing of the bill, they state an account setting forth the balance due them September 9, 1823, and then stating the amounts they have received since, according to the statement set forth in the bill. They have also inserted a charge for commissions, with three other small charges, and have added an interest account.

Unquestionably the bill required of Stone & Bellows to answer whether the certificate and mortgage were held as collateral security for the liabilities they were under for the plaintiff, and for the debts due to them. Would it have been sufficient had they admitted that fact, without any statement of the amount of those debts and liabilities, or with a statement of the gross amount, without particulars? We are of opinion that the answer would have been liable to exception, had they done either. There is, it is true, no particular interrogatory on that subject. But this, it is admitted, is immaterial. The bill states that there was no other demand for which they held it but the balance on the note of $2,900, and that the plaintiff was not indebted to them in any other sum, or for the payment of any other sum. They were required to answer to this statement whether it was true, and a general denial of its truth would not have been sufficient. If they did not admit its truth, but did hold the certificate as security, the nature of the case required that they should state for what they so held it. This is evident

from what follows in the bill. It proceeds to state that the plaintiff had frequently called upon them to render an account of the avails of the certificate, and the amount of their payments in respect thereof; that he hoped they would have rendered an account of all payments made to them, and all payments made by them, and asks the process of the court to the end that the defendants may answer all the matters stated and charged, and that Stone & Bellows may render an account, among other things, of all sums of money paid by them, or either of them, on account of any liabilities, &c. This rendition of an account by them, which is thus stated as one of the ends to be attained by the process, is not an account to be taken by a master, for the bill proceeds, " and that an account may be taken," &c. It appears to us, therefore, that if they had admitted that they held the certificate as security, and denied that they held it to secure the note of $2,900 only, without stating for what they did hold it, the answer would have been liable to exception for that reason.

It is further objected, that the answer is too uncertain, respecting the accounts, to permit it to be received as evidence in that particular.

Without doubt the answer, in order to be evidence, so as to require something more than the testimony of a witness to overcome it, must be distinct, positive, and of matter which may be within the knowledge of the defendants. 9 Pick. 78, *Copeland* v. *Crane;* 9 Cranch 160; 19 Pick. 234, *Parkman* v. *Welch.* If the answer deny any knowledge merely, that puts the plaintiff upon proof, but one witness is enough. 6 Harr. & Johns. 288, 291, *Drury* v. *Conner;* 1 Paige 210, 212, *Knickerbacker* v. *Harris.* But we are of opinion that the allegations of the defendants, Stone & Bellows, and the statement of the account, are sufficiently distinct, and the matters may well be understood to have been within their knowledge.

There is another matter to which we think we ought to advert in this case.

There are two modes of accounting in the master's office, the one by a debtor and creditor account, rendered by the accounting party, and verified by his affidavit; the other by an examination of him upon interrogatories, and both modes may be combined in taking the same account. 11 N. H. Rep. 501, 506, *Hollister* v. *Barkley*, and authorities cited.

If accounts have been rendered by way of schedules to the answer, it is said that the examination should set forth only the subsequent items of account. 1 Hoffman's Ch. Pr. 534. And upon an inquiry into very remote transactions, the accounts kept by a deceased party at the time were directed to be taken as *primâ facie* evidence, throwing on the other side the *onus* of impeaching them. 1 Jac. & Walk. 65, *Chalmer* v. *Bradley;* 2 Smith's Ch. Pr. 112.

The court may direct that affidavits be used before the master, on a reference, instead of interrogatories to the witnesses, if by death or otherwise it becomes impossible to obtain, under a commission, the evidence of the persons who made the affidavits. 3 Madd. Ch. 494, *Tillotson* v. *Hargrave;* 1 Hoffman's Ch. Pr. 521; 2 Smith's Ch. Pr. 140.

We are of opinion that the case, as it now stands, is one for special direction, within the principle of the cases just cited. The transactions and accounts which are in controversy in this case are of long standing, and the defendants Stone & Bellows have both deceased since the filing of their answer, so that they cannot now file a debtor and creditor account, or be examined in the master's office. The account rendered with that answer is verified by their oaths, and there is in the case the evidence of Josiah Bellows, Sr., that he was acting as agent of Josiah Bellows, 3d, of the firm of Stone & Bellows, at the

time of the execution of the mortgage; that a proposition was made by the plaintiff to give Stone & Bellows a certificate of $5,300, to be paid out of the effects of Carlisle & Co., and that they should thereupon release the locks, canals and mills, of which they had a mortgage; that he declined, unless there could be some security for the certificate; upon which it was finally agreed that the mortgage now in question should be given, and that the certificate and mortgage were received as a substitute for the locks and canals, &c.   He states further, that at the time when the suit was instituted for the foreclosure of the mortgage, he, as agent for J. Bellows, 3d, endeavored to bring about an adjustment of the business, and exhibited to the plaintiff the account of Stone & Bellows, which they had furnished, and which this plaintiff acknowledged to be all correct, except a charge for a demand against James Dewey & Co., which he said he never would pay unless he was obliged to.   The deponent states that he is unable to recollect the amount of the account which he thus exhibited; but we think there is sufficient in all these circumstances to require us to direct that the account rendered by Stone & Bellows, in connection with their answer, be taken before the masters as *primâ facie* evidence of the true state of the accounts between the parties, independent of the fact that it is responsive to the bill.

There is another reason why the report must be recommitted.   The plaintiff states that he procured Stone & Bellows to give their note to the Cheshire bank for $2,900, and procured Thomas Bellows to become surety upon the note; that, for the purpose of indemnifying them upon the note, he procured the certificate to be issued, and executed the mortgage; and he admits that there is due from him on account of the note of $2,900, so made to the Cheshire bank, a balance of $300, and such amount of interest as Stone & Bellows have paid upon it.   He denies that any

thing more is due on the mortgage, and he asks to redeem on paying what is due. Stone & Bellows in their answer state that, having occasion to borrow a sum of money of the Cheshire bank, for their own use and benefit, they procured Thomas Bellows to sign the note to the bank as their surety, &c., and the plaintiff contends that they have thereby deprived themselves of the benefit of his admission. But this does not seem to be the result. From the account annexed to the answer it seems that there was, prior to the giving of that note, a debt due the bank which they were paying, and charging the payments to the plaintiff; and the bill states that before that note was given they had become liable, as indorsers for the plaintiff, at several banks, particularly the Cheshire bank. If they paid the debts previously due, and they became the principals in that note, with Thomas Bellows as their surety, it is not very material, so far as the final result is concerned, whether that note be regarded as having been discounted for the plaintiff, as he states it, or whether it be considered as given upon a loan to Stone & Bellows, as they state it. It evidently had a connection with the accounts between the parties, for the mortgage was given to secure it, and both sides treat the amount of it as a debt chargeable to the plaintiff. If the answer stands, much more than the amount which the plaintiff admits is due to them and secured by the mortgage. If that be discredited, the admission of the plaintiff must stand good against him. He states that it was for the purpose of paying that note, among other things, that the certificate and mortgage were given, and by his bill he asks to redeem upon no other terms than the payment of the sums which he admits he has not paid. There is certainly nothing to show that he made any mistake in admitting that so much is due from him. If he had done so he should have corrected it by an amendment, or by filing a supplemental bill.

Bellows v. Stone.

Aside from the question whether the statement of the account in the answer of Stone & Bellows is responsive to the bill, and from the question whether, supposing it were not so, the special circumstances of the case would require the court to give directions that it be taken as *primâ facie* evidence of the true statement of the accounts between the parties, the case stands thus: The plaintiff brings his bill to redeem on payment of the money due, admitting that there is due the sum of $300 and interest. The defendants allege that much more is due, stating an account. The master's report finds that nothing is due. It would be a very strange decree for redemption which should be founded upon this prayer and admission in the bill, this claim in the answer, and this finding of the report. *The report must be recommitted.*

Upon the delivery of the foregoing opinion the counsel for the plaintiff asked to be further heard, and the case was reärgued.

PARKER, C. J. We have listened to the further suggestions of the counsel for the plaintiff with all due attention, notwithstanding the previous elaborate investigation, because we are quite desirous of avoiding any mistake respecting the principles involved in the case ; but we perceive nothing in those suggestions which should induce us to change our opinion.

The counsel says, " Admitting the defendants' answers to be evidence for them as to such matters as they were required by the statements of the bill to answer, a defendant is bound to answer such statements only as are essential to the plaintiff's case," for which he cites Wigram's Points, Third Proposition.

But that proposition, so far from militating with the opinion we have expressed, appears fully to sustain it. As found in the body of the work it is in these words : " The

right of a plaintiff in equity to the benefit of the defendant's oath, is limited to a discovery of such material facts as relate to the plaintiff's case, and does not extend to a discovery of the manner in which the defendant's case is to be established, or to evidence which relates exclusively to his case." In the statement of the same proposition in the introductory part of the work the word " exclusively" is inserted before " established," but this appears to be an immaterial difference.

Immediately following the third proposition, the author says:

" It has been contended (by the second proposition), that where the plaintiff makes a case in his bill, which would disprove the truth of, or otherwise invalidate the defence, he may be entitled to discovery from the defendant, so to impeach the defendant's case."

" So far, then, the plaintiff has a right to discovery, directed, as evidence, not to the case upon which his right to relief is founded, but to the purpose of attack upon the defendant's case."

" It seems also clear, that this right of a plaintiff to discovery in support of his own case is not abridged, as to any particular discovery, by the consideration that the matter of such particular discovery may be evidence of the defendant's case in common with that of the plaintiff."

Certainly there is nothing in all this to show that a mortgagor coming to redeem the property mortgaged has not a right to require of the defendant discovery of the amount and character of the claims for the security of which the latter holds the mortgage. These are not only material parts relating to the plaintiff's case, but are an essential part of it; for the ground and prayer of his bill is, that he may redeem on payment of the amount which is due. It is a part of his case to ascertain that amount; and he is entitled to exact of the conscience of the

defendant an answer giving discovery upon that point. If this discovery of the claims of the defendant, and the amount due upon them, involves the stating of an account for the purpose of ascertaining the balance, then the plaintiff may require such a statement, and does require it when he calls upon the defendant to state for what he holds the security, and the sum due.

It is not necessary to place this right of discovery upon the right of the plaintiff to impeach or attack the defendant's case, because it is part of his own case.

The question, what sum is due, is part of the defendant's case also, but it is in no sense one which relates exclusively to his case. It is a matter common to both, and not only so, it is equally common and equally important to both. That the defendant may use the discovery, when had, in his own defence, does not, therefore, abridge the plaintiff's right to require it.